[Cite as *State v. Fleckenstein*, 2023-Ohio-4347.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | C.A. No. 22CA011886 |
|---|---|
| Appellee/Cross-Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| SEBASTIAN FLECKENSTEIN | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant/Cross-Appellee | CASE No. 21CR104908 |

## DECISION AND JOURNAL ENTRY

Dated: December 4, 2023

FLAGG LANZINGER, Judge.

**{¶1}** Appellant/Cross-Appellee, Sebastian Fleckenstein, appeals from the judgment of the Lorain County Court of Common Pleas. Additionally, Appellee/Cross-Appellant, the State of Ohio, appeals the sentence imposed by that court. This Court affirms in part and reverses in part.

I.

**{¶2}** Shortly before 11:30 p.m., H.S. was traveling northbound on Apple Avenue in Lorain. He abruptly stopped his vehicle near the intersection of Apple Avenue and East 23rd Street. He then exited his vehicle. Six seconds later, someone shot him in the chest. Nine seconds after that first shot, a second shot was fired. A paramedic found H.S.'s body in the street about ten minutes later. His body was located several feet from the open driver's door of his vehicle.

**{¶3}** The initial investigation the police conducted did not yield any leads. The police appealed to the media for help. A media release resulted in several tips. A resident of Apple Avenue provided the police with security footage that captured H.S.'s car, the sound of gunfire,

and two men fleeing from a home on Apple Avenue. A search of that home uncovered a credit card belonging to Mr. Fleckenstein. Additionally, a man contacted the police and told them he had purchased a firearm from Mr. Fleckenstein a few days after the shooting.

{¶4} The police attempted to reach out to Mr. Fleckenstein through his probation officer, but Mr. Fleckenstein refused to cooperate. The police arrested him eleven days after the shooting. A detective interviewed him at the police station. Mr. Fleckenstein admitted he shot H.S. He claimed he acted in self-defense.

{¶5} A grand jury indicted Mr. Fleckenstein. He was charged with murder, two counts of felony murder, involuntary manslaughter, discharging a firearm on or near prohibited premises, two counts of felonious assault, tampering with evidence, receiving stolen property, obstructing official business, and having a weapon under disability. The two counts of felonious assault were charged under different subdivisions. They served as the predicate offenses for the two counts of felony murder. Ten of Mr. Fleckenstein's counts also carried a firearm specification. Six of his counts carried a repeat violent offender specification.

{¶6} The matter proceeded to a jury trial. The trial court acquitted Mr. Fleckenstein of obstructing official business. The court submitted his remaining counts to the jury. The jury found him not guilty of murder and receiving stolen property. The jury found him guilty of his remaining charges and firearm specifications. The trial court found him to be a repeat violent offender.

{¶7} The trial court merged Mr. Fleckenstein's counts for felony murder, involuntary manslaughter, discharging a firearm on or near prohibited premises, and felonious assault as allied offenses of similar import. The State elected to proceed on one of the felony murder counts. The court sentenced Mr. Fleckenstein to fifteen years to life in prison on that count. It also imposed a three-year prison term on the firearm specification linked to that count. The court ordered the two

terms to run consecutively for a total sentence of eighteen years to life in prison. It ordered the remainder of Mr. Fleckenstein's prison terms to run concurrently with that sentence.

{¶8} Mr. Fleckenstein now appeals from his convictions. Additionally, the State appeals the sentence the trial court imposed. Collectively, Mr. Fleckenstein and the State assign eight errors for this Court's review.

## II.

### MR. FLECKENSTEIN'S ASSIGNMENT OF ERROR I

APPELLANT WAS DENIED DUE PROCESS HAVING BEEN TRIED WITHOUT PROPER SEPARATION OF POWERS ALLOWING THE EXECUTIVE RATHER THAN THE JUDICIARY TO CONDUCT THE TRIAL.

{¶9} In his first assignment of error, Mr. Fleckenstein argues he was denied due process when the State overcharged him and the trial court instructed the jury to consider each of his counts independently. He notes that the State charged him with murder, felony murder, involuntary manslaughter, and other lesser-included offenses. According to Mr. Fleckenstein, there was no opportunity for the trial court to consider whether it ought to instruct the jury on certain lesser-included offenses because those offenses were already included in his indictment. He argues that the State usurped the function of the judicial branch in that regard and violated the separation of powers doctrine. Further, he argues, the State's charging strategy set the stage for a compromised verdict.

{¶10} Mr. Fleckenstein acknowledges that he did not raise his due process argument in the trial court. Nor has he argued plain error on appeal. "The failure to raise a constitutional issue at the trial level forfeits the right to make a constitutional argument on appeal. While a defendant who forfeits such an argument still may argue plain error on appeal, this court will not sua sponte undertake a plain-error analysis if a defendant fails to do so." *State v. Morgan*, 9th Dist. Summit

No. 29490, 2020-Ohio-3955, ¶ 15, quoting *State v. McCraw*, 9th Dist. Medina No. 14CA0009-M, 2015-Ohio-3809, ¶ 5. "Because [Mr. Fleckenstein] has not argued plain error on appeal, this Court will not create such an argument on his behalf." *McCraw* at ¶ 5. Mr. Fleckenstein's first assignment of error is overruled.

MR. FLECKENSTEIN'S ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN NOT INSTRUCTING THE JURY THAT THE WEAPONS DISABILITY CHARGE WAS SUBJECT TO A SELF DEFENSE INSTRUCTION[.]

**{¶11}** In his second assignment of error, Mr. Fleckenstein argues the trial court erred when it failed to instruct the jury on self-defense with respect to his charge of having a weapon under disability. We reject his argument.

**{¶12}** Crim.R. 30(A) requires parties to object to a trial court's "giving or the failure to give any [jury] instructions * * * before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." "A defendant who fails to preserve an objection to a trial court's jury instruction is limited to a claim of plain error." *State v. Knight*, 9th Dist. Summit No. 29057, 2020-Ohio-6709, ¶ 44. "This Court will not construct a plain error argument on behalf of an appellant who has failed to argue plain error on appeal." *State v. Irvine*, 9th Dist. Summit No. 28998, 2019-Ohio-959, ¶ 42.

**{¶13}** Mr. Fleckenstein never asked the trial court to include a self-defense instruction when instructing the jury on having a weapon under disability. Nor did he object when the trial court failed to include that instruction. Further, Mr. Fleckenstein did not object during closing arguments when the prosecutor told the jury that his self-defense claim did not apply to certain counts, including his count of having a weapon under disability. Because he failed to properly preserve his argument in the lower court, Mr. Fleckenstein is limited to a claim of plain error on

appeal. *Knight* at ¶ 44. Yet, he has not argued plain error. This Court will not construct an argument on his behalf. *Irvine* at ¶ 42. Mr. Fleckenstein's second assignment of error is overruled.

MR. FLECKENSTEIN'S ASSIGNMENT OF ERROR III

THE CONVICTIONS IN COUNTS FOUR AND FIVE – INVOLUNTARY MANSLAUGHTER AND SHOOTING OVER A ROADWAY – WERE BASED ON INSUFFICIENT EVIDENCE.

{¶14} In his third assignment of error, Mr. Fleckenstein argues his convictions for involuntary manslaughter and discharging a firearm on or near prohibited premises are based on insufficient evidence. We disagree.

{¶15} Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In carrying out this review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶16} A person commits involuntary manslaughter if he "cause[s] the death of another * * * as a proximate result of [his] committing or attempting to commit a felony." R.C. 2903.04(A). Mr. Fleckenstein's involuntary manslaughter count was predicated upon his having proximately caused H.S.'s death by discharging a firearm on or near prohibited premises. Relevant to this appeal, a person commits that offense if he fires a gun "upon or over a public road" and "cause[s] serious physical harm to any person * * *." R.C. 2923.162(A)(3) and (B)(4).

{¶17} Mr. Fleckenstein admits he shot H.S. He argues his convictions for involuntary manslaughter and discharging a firearm on or near prohibited premises are based on insufficient evidence because the State failed to prove he shot H.S. while H.S. was in the street. He notes that H.S. was killed near the tree lawn, sidewalk, and front lawn of a house. He also notes that H.S. did not die instantly and could have been "fully ambulatory from seconds to minutes." According to Mr. Fleckenstein, there was no evidence as to H.S.'s precise location when he was shot. He argues that the street was only one of several possible locations where H.S. might have been shot. Thus, he argues, the State did not prove that he fired a gun "over a public road." R.C. 2923.162(A)(3).

{¶18} During its case-in-chief, the State introduced security footage it obtained from a resident of Apple Avenue. The resident lived to the south of the area where Mr. Fleckenstein shot H.S. The footage showed a vehicle driving northbound on Apple Avenue before screeching to an audible halt. Dark conditions on the street and the distance between the vehicle and the security camera made it impossible for anyone to see H.S. when viewing the footage. The footage did show his driver's door open, however, as a small light appeared on the inside, bottom of the door. After the door opened, the light temporarily blinked out. Several officers testified that occurrence was consistent with H.S. exiting the vehicle and briefly blocking the light. Six seconds later, a single gunshot erupted. The gunshot was virtually contemporaneous with the driver's door light temporarily blinking out again. Officers testified that occurrence was consistent with H.S. falling in the street and temporarily blocking the light as his body passed by it.

{¶19} It is undisputed that paramedics and the police found H.S.'s body in the street. His body was located just a few feet away from his open car door. The coroner testified that H.S. had abrasions on both knees at the time of his autopsy. The coroner testified those abrasions were

consistent with H.S. falling on the pavement of the street when he was shot. Moreover, the only blood the police found on scene was a small patch of blood directly beneath H.S.'s body.

{¶20} Viewing the evidence in a light most favorable to the State, a rational trier of fact could have concluded that the State proved Mr. Fleckenstein shot H.S. while H.S. was in the street, and thus, fired a gun over a public road. *See Jenks*, 61 Ohio St.3d at paragraph two of the syllabus. The State set forth evidence that H.S.'s body was found in the street. The jury heard testimony and saw security footage tending to show he was shot within seconds of exiting his vehicle. That same evidence tended to show he fell next to his vehicle. The jury heard testimony that the injuries H.S. sustained to his knees were consistent with his having fallen on the pavement in the street. They also heard testimony that the police only found blood directly beneath H.S.'s body. The jury reasonably could have inferred from the foregoing, circumstantial evidence that H.S. was shot in the street, fell immediately to his knees, and remained in that same location until he died. *See State v. Suggs*, 9th Dist. Summit No. 21782, 2004-Ohio-4191, ¶ 14 (circumstantial evidence and reasonable inferences to be drawn therefrom may satisfy State's burden of production). Mr. Fleckenstein's third assignment of error is overruled.

MR. FLECKENSTEIN'S ASSIGNMENT OF ERROR IV

THE STATE'S REBUTTAL OF SELF DEFENSE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶21} In his fourth assignment of error, Mr. Fleckenstein argues the jury lost its way when it rejected his claim of self-defense. We disagree.

{¶22} When considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction

must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction." *State v. Croghan*, 9th Dist. Summit No. 29290, 2019-Ohio-3970, ¶ 26. This Court "will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over another version." *State v. Warren*, 9th Dist. Summit No. 29455, 2020-Ohio-6990, ¶ 25, quoting *State v. Tolliver*, 9th Dist. Lorain No. 16CA010986, 2017-Ohio-4214, ¶ 15.

{¶23} Self-defense is an affirmative defense in Ohio. *State v. Messenger*, 171 Ohio St.3d 227, 2022-Ohio-4562, ¶ 24. "[A] defendant charged with an offense involving the use of force has the burden of producing legally sufficient evidence that [his] use of force was in self-defense." *Id.* at ¶ 25. Once a defendant satisfies his burden of production, the burden of persuasion shifts to the State "'to prove beyond a reasonable doubt that the accused did not use force in self-defense.'" *State v. Moore*, 9th Dist. Summit No. 29581, 2023-Ohio-2864, ¶ 9, quoting *State v. Brooks*, 170 Ohio St.3d 1, 2022-Ohio-2478, ¶ 6. The State's burden "is subject to a manifest-weight review on appeal." *Messenger* at ¶ 27.

{¶24} The elements of self-defense are as follows:

(1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he [or she] was in imminent danger of death or great bodily harm and that his [or her] only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger.

(Alterations sic.) *Id.* at ¶ 14, quoting *State v. Barnes*, 94 Ohio St.3d 21, 24 (2002). To carry its burden of persuasion, the State need only disprove one of the foregoing elements beyond a reasonable doubt. *State v. Williams*, 9th Dist. Summit No. 29444, 2020-Ohio-3269, ¶ 10.

{¶25} Mr. Fleckenstein argues the jury lost its way when it rejected his claim of self-defense. He notes this incident took place at night in a high crime area. Further, he argues the small size of the front lawns in the area meant the homes and their porches were close to the street. He did not know H.S., so there was no dispute between them. Moreover, the coroner found illicit drugs and alcohol in H.S.'s system. According to Mr. Fleckenstein, the greater weight of the evidence tended to show he shot H.S. after H.S. skidded to a halt, ran at him, and made him fear for his life. He claims the jury lost its way when it concluded otherwise. He also claims that improper jury instructions aided the jury in losing its way.

{¶26} To the extent Mr. Fleckenstein takes issue with jury instructions in the context of this assignment of error, we decline to address his argument. His captioned assignment of error is limited to the manifest weight of the evidence. Thus, this Court limits its review to that issue. *See State v. Miller*, 9th Dist. Summit No. 30335, 2023-Ohio-1466, ¶ 21.

{¶27} Mr. Fleckenstein did not testify at trial, but he spoke with the police after his arrest. The State played the recording of his interview at trial. During his interview, Mr. Fleckenstein said he was relaxing on the porch with his stepfather when a car screeched to a halt in front of the house. He watched as H.S. emerged from the car, walked several steps to a different car parked in the street, looked at that car's license plate, and said, "hell no." According to Mr. Fleckenstein, H.S. then ran back to his car and appeared to grab something before turning and running for the porch. Mr. Fleckenstein asked his stepfather whether he knew H.S. and whether he (Mr. Fleckenstein) should shoot him. According to Mr. Fleckenstein, his stepfather did not know H.S. and told Mr. Fleckenstein to go ahead and shoot. Mr. Fleckenstein claimed he used a gun that was kept within reach of the area where he was sitting. He said he shot at H.S. because he was terrified and thought his life was in jeopardy. He told the police that, after he fired the gun, he went over

to check on H.S. before leaving the area. He said he did so because he did not know whether he had hit H.S. Mr. Fleckenstein said it was difficult for him to see because it was very dark outside and he was blind in one eye.

{¶28} As previously noted, the State introduced security footage taken from a residence to the south of the shooting. The footage aided the State in establishing a timeline. It showed H.S.'s vehicle come to a screeching halt. It showed a small light appear on the bottom, inside of the driver's door when it opened. It captured that same light blink out, a gunshot six seconds later, and a second blink in the light at virtually the same time as the gunshot. The footage allowed the State to prove that only six seconds elapsed between the time H.S. stepped out of his vehicle and the time he was shot. *See* Discussion, *supra*. It also allowed the State to prove that H.S. fell close enough to his vehicle to temporarily block the path between the security camera and the light on the driver's door. *See id.*

{¶29} Apart from helping the State establish a timeline, the security footage aided the State in disproving certain aspects of Mr. Fleckenstein's statement. Mr. Fleckenstein claimed H.S. exited his vehicle, walked over to a parked car, read the car's license plate, exclaimed to himself, ran back to his vehicle, reached inside, and ran toward the porch where Mr. Fleckenstein was sitting. Yet, that amount of activity was inconsistent with the short span of only six seconds that elapsed between the time H.S. exited the vehicle and the time he was shot. The location of his body also tended to disprove Mr. Fleckenstein's claim that H.S. ran toward the porch. The evidence tended to show H.S. was still quite close to his vehicle when he fell to his knees and died in the street. Finally, the security footage did not support Mr. Fleckenstein's claim that he went over to check on H.S. after the shooting. The footage showed two males fleeing the scene directly after the shooting, and neither paused in the street.

{¶30} The police never found any weapons when they searched H.S.'s body, the area surrounding it, or his vehicle. Nor did Mr. Fleckenstein claim to have seen H.S. with a weapon. Indeed, Mr. Fleckenstein admitted it was dark and he had difficulty seeing due to his partial blindness. As previously noted, Mr. Fleckenstein was arrested eleven days after the shooting. Detective Jeremy Gray testified that the police arrested him at a home on Hamilton Avenue. During his post-arrest interview, Mr. Fleckenstein told the police his cell phone was gone because he broke it after the shooting. Yet, the owner of the home on Hamilton Avenue told the police that Mr. Fleckenstein hid the phone in his attic and asked him to destroy it. Detective Gray confirmed that the police searched the homeowner's attic and found the phone.

{¶31} Detective Adam Garvin performed an extraction on Mr. Fleckenstein's cell phone. He uncovered internet searches performed in the aftermath of the shooting. The phone had been used to search for information related to H.S. and answers to the following questions: (1) "Can the police track your phone[,]" and (2) "Stand your ground law if you have a felony." Additionally, Detective Garvin uncovered various messages sent to others before and after the shooting. Less than thirty minutes before the shooting, the phone was used to send a message to a recipient that asked: "Bro, do you wanna have a shootout?" After the shooting, the phone was used to send the following message via a social media messaging service: "Man you better ask the nigga who they just scraped off 23rd about me." A few hours later, the phone was used to send another message to a different social media that read: "I gotta get some shit for this bitch ass nigga I smoked[.]" Around that same time, the phone sent a text message that read: "I shot him in his neck and destroyed his whole spine and back of his skull[.]" Mr. Fleckenstein also used his phone to film himself driving by a memorial held for H.S. at the scene of the shooting. Mr. Fleckenstein

uploaded that video to a social media application and added the words "Stay dangerous" next to a broken heart emoji.

{¶32} Having reviewed the record, we cannot conclude the jury lost its way when it found that the State disproved Mr. Fleckenstein's claim of self-defense. *See Messenger*, 171 Ohio St.3d 227, 2022-Ohio-4562, at ¶ 27. While Mr. Fleckenstein claimed H.S. ran toward him, the circumstantial evidence tended to show he shot H.S. where H.S. stood six seconds after he emerged from his vehicle. The jury was in the best position to assess Mr. Fleckenstein's credibility, particularly in light of the messages and the video the police found on his phone. *See State v. Moore*, 9th Dist. Summit No. 29581, 2023-Ohio-2864, ¶ 12. The jury reasonably could have concluded that Mr. Fleckenstein was at fault in creating the situation that led to H.S.'s death because H.S. never ran toward Mr. Fleckenstein and Mr. Fleckenstein shot him where he stood absent any provocation on the part of H.S. *See Messenger* at ¶ 14, quoting *Barnes*, 94 Ohio St.3d at 24. For that same reason, the jury reasonably could have concluded that Mr. Fleckenstein lacked a bona fide belief that he was in imminent danger of death or great bodily harm from H.S. and that his only means of escape was the use of deadly force. *See Messenger* at ¶ 14, quoting *Barnes* at 24. Mr. Fleckenstein has not shown that this is the exceptional case where the evidence weighs heavily against the conclusion that the State disproved his claim of self-defense. *See State v. Williams*, 9th Dist. Summit No. 29444, 2020-Ohio-3269, ¶ 32. Thus, his fourth assignment of error is overruled.

MR. FLECKENSTEIN'S ASSIGNMENT OF ERROR V

R.C. 2903.02(B) VIOLATES THE FEDERAL AND STATE CONSTITUTIONS WHEN THE PREDICATE OFFENSE IS THE LETHAL ACT WICH (sic) CAUSES DEATH[.]

{¶33} In his fifth assignment of error, Mr. Fleckenstein argues the felony murder statute is unconstitutional. He urges this Court to adopt the independent felony/merger doctrine. Yet, our review of the record reveals that Mr. Fleckenstein forfeited his argument by failing to raise it in the lower court. *See Morgan*, 2020-Ohio-3955, at ¶ 15, quoting *McCraw*, 2015-Ohio-3809, at ¶ 5. Mr. Fleckenstein has not argued plain error, and this Court will not construct an argument on his behalf. *McCraw* at ¶ 5. Thus, his fifth assignment of error is overruled.

MR. FLECKENSTEIN'S ASSIGNMENT OF ERROR VI

APPELLANT WAS PREJUDICED BY OHIO LAW WHICH PROHIBITS IMPERFECT SELF DEFENSE TO MITIGATE PUNISHMENT.

{¶34} In his sixth assignment of error, Mr. Fleckenstein argues the trial court erred when it failed to instruct the jury on the imperfect self-defense doctrine. He acknowledges that he did not request such an instruction. Nor did he object when the trial court failed to give that instruction. As previously noted, "[a] defendant who fails to preserve an objection to a trial court's jury instruction is limited to a claim of plain error." *Knight*, 2020-Ohio-6709, at ¶ 44. *See also* Crim.R. 30(A). Mr. Fleckenstein failed to preserve his objection and has not argued plain error on appeal. "This Court will not construct a plain error argument on [his] behalf * * *." *Irvine*, 2019-Ohio-959, at ¶ 42. As such, his sixth assignment of error is overruled.

MR. FLECKENSTEIN'S ASSIGNMENT OF ERROR VII

APPELLANT WAS PREJUDICED BY INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL[.]

{¶35} In his seventh assignment of error, Mr. Fleckenstein argues that he received ineffective assistance of counsel. We disagree.

{¶36} "[I]n Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, ¶ 62. To prevail on a claim of ineffective assistance of

counsel, Mr. Fleckenstein must establish: (1) that his counsel's performance was deficient to the extent that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[;]" and (2) that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficient performance is one that falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. To establish prejudice, Mr. Fleckenstein must show that there existed a reasonable probability that, but for his counsel's errors, the outcome of the proceeding would have been different. *State v. Sowell*, 148 Ohio St.3d 554, 2016-Ohio-8025, ¶ 138. "This Court need not address both prongs of *Strickland* if an appellant fails to prove either prong." *State v. Carter*, 9th Dist. Summit No. 27717, 2017-Ohio-8847, ¶ 27.

{¶37} Mr. Fleckenstein argues his trial counsel was ineffective for two reasons. First, he claims counsel should have objected to his indictment because it contained "duplicative lesser[-]included offenses * * *." He argues that error allowed the jury to reach a compromised verdict. Second, he claims counsel should have requested jury instructions to clarify that his felony disability did not prohibit him from acting in self-defense and using a firearm to do so. He argues that error affected the jury's verdict with respect to his count of having a weapon under disability. He further argues that error affected his other counts because, if it was unlawful for him to possess a firearm, then the logical conclusion to be drawn therefrom was that he was at fault in creating the incident with H.S.

{¶38} This Court rejects Mr. Fleckenstein's argument that his counsel was ineffective for not objecting to his indictment. "Prosecutors enjoy wide discretion in charging decisions, and such decisions are generally not subject to judicial review." *State v. Krowiak*, 9th Dist. Medina No. 21CA0003-M, 2022-Ohio-413, ¶ 26. *Accord State ex rel. Whittaker v. Lucas County Prosecutor's*

*Office*, 164 Ohio St.3d 151, 2021-Ohio-1241, ¶ 11. Trial counsel may well have decided that any challenge to the prosecutor's decision to charge Mr. Fleckenstein with lesser-included offenses was unlikely to succeed. *See State v. Mosley*, 9th Dist. Wayne No. 19AP0016, 2020-Ohio-5047, ¶ 78. "This Court has consistently held that trial counsel's failure to make objections is within the realm of trial tactics and does not establish ineffective assistance of counsel." *State v. Smith*, 9th Dist. Wayne No. 12CA0060, 2013-Ohio-3868, ¶ 24, quoting *State v. Guenther*, 9th Dist. Lorain No. 05CA008663, 2006-Ohio-767, ¶ 74.

**{¶39}** This Court also rejects Mr. Fleckenstein's argument that his counsel was ineffective for not requesting additional jury instructions regarding his claim of self-defense. The trial court instructed the jury on self-defense with respect to Mr. Fleckenstein's charges of murder, felony murder, involuntary manslaughter, discharging a firearm on or near prohibited premises, and felonious assault. The jury chose to believe the State's version of the events with respect to each of those charges. Mr. Fleckenstein has not explained how an additional instruction on self-defense with respect to his charge of having a weapon under disability would have resulted in a different outcome. *See Sowell*, 148 Ohio St.3d 554, 2016-Ohio-8025, at ¶ 138. At no point was the jury told that Mr. Fleckenstein's felony disability made him ineligible for a claim of self-defense. The jury listened to the evidence and determined that the State disproved Mr. Fleckenstein's claim of self-defense. Even setting aside the at fault element of self-defense, the jury reasonably could have concluded that Mr. Fleckenstein lacked a bona fide belief that he was in imminent danger of death or great bodily harm from H.S. and that his only means of escape was the use of deadly force. *See* Discussion, *supra*. Mr. Fleckenstein has not shown that, but for his counsel's failure to request additional instructions on the at fault element of self-defense, there is a reasonable probability the outcome of his trial would have been different. *See Sowell* at ¶ 138. Because Mr. Fleckenstein

has not established his claim of ineffective assistance of counsel, his seventh assignment of error is overruled.

STATE'S ASSIGNMENT OF ERROR

THE TRIAL COURT'S SENTENCE IS CONTRARY TO LAW BECAUSE THE COURT FAILED TO IMPOSE PRISON TERMS FOR THE TWO MOST SERIOUS FIREARM SPECIFICATIONS AS REQUIRED BY R.C. 2929.14(B)(1)(G).

{¶40} In its sole assignment of error, the State argues the trial court erred when it failed to sentence Mr. Fleckenstein on the firearm specifications linked to his two most serious offenses. This Court agrees.

{¶41} In reviewing a felony sentence, "[t]he * * * standard for review is not whether the sentencing court abused its discretion." R.C. 2953.08(G)(2). "[A]n appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence" that: (1) "the record does not support the trial court's findings under relevant statutes[,]" or (2) "the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1. Clear and convincing evidence is that "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶42} The jury found Mr. Fleckenstein guilty of the firearm specifications linked to his counts for felony murder, involuntary manslaughter, discharging a firearm on or near prohibited premises, felonious assault, tampering with evidence, and having a weapon under disability. When sentencing him, the trial court ordered him to serve a three-year sentence on the firearm specification linked to one of his felony murder counts. The court either merged the remainder of his firearm specifications or ordered them to run concurrently with that three-year term. The State argues the trial court erred when it failed to sentence Mr. Fleckenstein on both the firearm

specification linked to his felony murder count and the firearm specification linked to one of his felonious assault counts. The State argues, by statute, the trial court was required to sentence Mr. Fleckenstein on both specifications and order the consecutive service of those three-year terms.

{¶43} "In the instance of multiple firearm specifications, a defendant generally will be subject to only one three-year sentence 'for felonies committed as part of the same act or transaction.'" *State v. Rouse*, 9th Dist. Summit No. 28301, 2018-Ohio-3266, ¶ 10, quoting former R.C. 2929.14(B)(1)(b). "The general rule does not apply, however, when R.C. 2929.14(B)(1)(g) controls." *Rouse* at ¶ 10. That statute provided, in relevant part:

> If an offender is convicted of * * * two or more felonies, if one or more of those felonies are * * * felonious assault * * *, and if the offender is convicted of * * * a [three-year firearm] specification * * * in connection with two or more of the felonies, the sentencing court shall impose on the offender the [three-year] prison term * * * for each of the two most serious specifications of which the offender is convicted * * * and, in its discretion, also may impose on the offender the prison term specified under that division for any or all of the remaining specifications.

R.C. 2929.14(B)(1)(g). "The statute makes no exception to the application of its provisions if one of the underlying felony offenses has been merged." *State v. Bollar*, Slip Opinion No. 2022-Ohio-4370, ¶ 19. It requires the trial court to order consecutive service of a defendant's specifications under the conditions set forth therein. *Rouse* at ¶ 10, citing *State v. Urconis*, 9th Dist. Wayne No. 16AP0061, 2017-Ohio-8515, ¶ 8-10.

{¶44} The jury found Mr. Fleckenstein guilty of the three-year firearm specification linked to one of his felonious assault counts. It also found him guilty of the three-year firearm specifications linked to his other count of felonious assault and his counts for felony murder, involuntary manslaughter, and discharging a firearm on or near prohibited premises. The trial court only sentenced Mr. Fleckenstein to serve one three-year term for the firearm specification linked to his felony murder count. It found that his remaining three-year specifications merged

with that count for purposes of sentencing. Yet, R.C. 2929.14(B)(1)(g) "makes no exception to the application of its provisions if one of the underlying felony offenses has been merged." *Bollar* at ¶ 19. The trial court was required to impose a three-year sentence for each of Mr. Fleckenstein's two most serious specifications and run those terms consecutively. R.C. 2929.14(B)(1)(g). *Accord State v. Ross*, 9th Dist. Lorain No. 21CA011729, 2023-Ohio-1185, ¶ 64. Because the trial court failed to do so, that portion of its sentencing entry is contrary to law.

{¶45} This Court vacates Mr. Fleckenstein's sentence to the extent the trial court merged his three-year firearm specifications for felonious assault and felony murder. The matter is remanded for resentencing on those two specifications. *See* R.C. 2953.08(G). The State's assignment of error is sustained.

III.

{¶46} Mr. Fleckenstein's assignments of error are overruled. The State's assignment of error is sustained. The judgment of the Lorain County Court of Common Pleas is affirmed in part, reversed in part, and the cause is remanded for further proceedings consistent with the foregoing opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant/Cross-Appellee.

JILL FLAGG LANZINGER
FOR THE COURT

HENSAL, P. J.
STEVENSON, J.
CONCUR.

APPEARANCES:

JOHN F. CORRIGAN, Attorney at Law, for Appellant/Cross-Appellee.

J. D. TOMLINSON, Prosecuting Attorney, and LINDSEY C. POPROCKI, Assistant Prosecuting Attorney, for Appellee/Cross-Appellant.