[Cite as *State v. Peasley*, 2026-Ohio-1946.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 31540 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| JEFFERY PEASLEY | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR-2021-11-4237 |

DECISION AND JOURNAL ENTRY

Dated: May 27, 2026

HENSAL, Judge.

{¶1} Jeffery Peasley appeals his convictions by the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} On the morning of October 10, 2021, Mr. Peasley entered the house where he had occasionally been staying with a friend, found R.Z. sitting on a couch, wrested a shotgun from R.Z.'s hands, and shot him from behind at close range. The bullet entered R.Z.'s right hip after passing through several layers of his clothing. It moved right to left, shattering his pelvis and tearing the right iliac artery. In addition to external blood loss, R.Z. lost 750 milliliters of blood internally. According to the chief deputy medical examiner who conducted his autopsy, R.Z. could have remained conscious briefly, but his injuries would have resulted in death within minutes. Mr. Peasley refused to render aid to R.Z. despite his cries for help. Instead, he covered his body with

a blanket, changed clothes, and left the scene on the motorcycle that R.Z. had left parked in the driveway.

{¶3} Mr. Peasley was arrested after he crashed the stolen motorcycle in Niles, Ohio. He was charged with murder in violation of Revised Code Section 2903.02(A) and 2903.02(B), felonious assault, kidnapping, having weapons under disability, grand theft of a motor vehicle, and disrupting public services. The indictment also included numerous firearm and repeat violent offender specifications. During trial, Mr. Peasley asserted that he acted in self-defense. The jury found him not guilty of kidnapping but guilty of the remaining charges and their accompanying specifications. The trial court sentenced Mr. Peasley to a stated prison term of twenty-six years to life. Mr. Peasley appealed, assigning six errors for this Court's review.

II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED TO APPELLANT'S PREJUDICE WHEN IT IMPROPERLY INSTRUCTED THE JURY THAT IN ORDER FOR APPELLANT TO CLAIM SELF DEFENSE HE COULD NOT VIOLATE THE DUTY TO RETREAT IN VIOLATION OF THE PLAIN LANGUAGE OF R.C. 2901.09.

### ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED TO APPELLANT'S PREJUDICE WHEN IT FAILED TO INSTRUCT THE JURY THAT DEFENDANT WAS PRESUMED TO HAVE ACTED IN SELF DEFENSE WHEN THE DEFENSIVE FORCE USED IS USED AGAINST ANOTHER PERSON WHO IS UNLAWFULLY OR WITHOUT PRIVILEGE TO BE IN THE RESIDENCE IN VIOLATION OF R.C. 2901.05(B)(2) AND 2901.09.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT IMPROPERLY INSTRUCTED THE JURY THAT THE JURY WAS NOT REQUIRED TO RETURN A UNANIMOUS VERDICT AS TO SELF-DEFENSE.

{¶4} In his first, second, and third assignments of error, Mr. Peasley argues that the trial court erred by not providing certain jury instructions addressing self-defense. "On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." Crim.R. 30(A). A defendant who fails to object to jury instructions forfeits all but plain error on appeal. *State v. Ewing*, 2021-Ohio-2220, ¶ 32 (9th Dist.), citing *State v. Owens*, 2020-Ohio-4614, ¶ 7. Mr. Peasley did not object to the jury instructions.

{¶5} In *State v. Wolons*, 44 Ohio St.3d 64 (1989), the Supreme Court of Ohio recognized an exception to the general rule, however, when "the record affirmatively shows that a trial court has been fully apprised of the correct law governing a material issue in dispute, and . . . the requesting party has been unsuccessful in obtaining the inclusion of that law in the trial court's charge to the jury." *Id*. at paragraph one of the syllabus. The Supreme Court explained that the rationale limiting a defendant's ability to assign error on appeal is not present when "a party makes his position sufficiently clear to give the court an opportunity to correct a mistake or defect . . ." *Id*. at 67. In *Wolons*, for example, defense counsel asked the trial court why the requested instruction would not be given and "a colloquy ensued in which counsel and the trial court discussed cases relevant to the issue of intoxication as a defense." *Id.* at 66. The Supreme Court explained that although counsel did not formally object to the instruction,

> counsel and the trial court had an extensive discussion of the cases relevant to the issue of whether the trial court should give the requested jury instruction on intoxication. Defendant attempted to persuade the court that the evidence and cases supported his position, and it is clear that the trial court understood his objection to the court's refusal to so instruct.

*Id*. at 67. *See also State v. Mack*, 82 Ohio St.3d 198, 199-200 (1998); *State v. Claren*, 2020-Ohio-615, ¶ 23 (9th Dist.).

{¶6}   In this case, defense counsel filed proposed jury instructions approximately two weeks before trial.  The record reflects that counsel discussed "finalization of jury instructions" with the trial court, but that discussion took place off the record.  Under these circumstances, this Court cannot conclude that "the record affirmatively shows that a trial court [was] fully apprised of the correct law governing a material issue in dispute . . . ."  *Wolons* at paragraph one of the syllabus.  Consequently, Mr. Peasley has forfeited all but plain error for purposes of appeal.  He has not argued plain error, however, and this Court will not construct a plain-error argument on his behalf.  *See State v. Fleckenstein*, 2023-Ohio-4347, ¶ 12 (9th Dist.).  His first, second, and third assignments of error are overruled on that basis.

### ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED WHEN IT PERMITTED THE DETECTIVE TO TESTIFY OVER OBJECTION TO TESTIMONIAL OUT OF COURT STATEMENTS IN VIOLATION OF THE CONFRONTATION CLAUSE AND ALLOWED THE DETECTIVE TO VOUCH FOR THE CREDIBILITY OF ANOTHER WITNESS.

{¶7}   Mr. Peasley's fourth assignment of error argues that the trial court erred by permitting a detective to testify about out-of-court statements made by three individuals.  Within this single assignment of error, Mr. Peasley appears to make three separate assertions without fully developing any, leaving this Court with an incomplete roadmap at best to guide our analysis.  This Court has consistently noted that it is inappropriate to combine multiple legal arguments within a single assignment of error.  *See, e.g., State v. Myers*, 2022-Ohio-991, ¶ 6 (9th Dist.).  This Court has the discretion to consider his arguments, however, and we do so even though they are both improperly framed.  *See id.*

{¶8}   Mr. Peasley's first argument appears to be that a detective who investigated the murder testified about out-of-court statements by witnesses for the truth of the matter asserted and

not, as the State maintained, to explain the next steps of the investigation. "A law-enforcement officer may testify about a declarant's out-of-court statement for the nonhearsay purpose of explaining the next investigative step." *State v. Clinton*, 2017-Ohio-9423, ¶ 136. The investigatory conduct at issue must be relevant and equivocal, and it must be contemporaneous with the statements at issue. *State v. Ricks*, 2013-Ohio-3712, ¶ 22, quoting *State v. Blevins*, 36 Ohio App.3d 147, 149 (10th Dist. 1987). When an out-of-court statement connects the defendant to the crime charged, however, the testimony is inadmissible hearsay. *Clinton* at ¶ 137.

{¶9} Mr. Peasley first argues that the detective testified that he spoke to the owner of the motorcycle that Mr. Peasley crashed, who told him that she gave the motorcycle to R.Z. although it remained titled in her name. The owner of the motorcycle did not testify. According to Mr. Peasley, this constituted impermissible hearsay because the statements identified him with the crimes charged. Mr. Peasley did not object to this testimony, however, so his argument on appeal is limited to plain error. *State v. Davis*, 2008-Ohio-2, ¶ 116. Mr. Peasley has not articulated a plain-error argument, and this Court declines to construct one on his behalf. *See State v. Brown*, 2011-Ohio-1041, ¶ 17 (9th Dist.).

{¶10} Mr. Peasley also suggests that the trial court erred by permitting the detective to testify that he contacted D.S., a friend of J.V.'s who spoke to her on the day of the murder. The State asked the detective whether he was able to confirm or deny any of J.V.'s own statements, but the detective testified that he never actually spoke to D.S. Mr. Peasley has not identified any out-of-court statements in this portion of the detective's testimony, so his argument in this regard is not well taken.

{¶11} Mr. Peasley also argues that the trial court violated his rights under the Confrontation Clause by permitting the detective to testify about out-of-court statements made by

J.V., who lived in the house where the murder occurred and was present at the time of the shooting. Even assuming that the detective's testimony was hearsay, however, the Confrontation Clause is not violated by the admission of hearsay if the declarant testifies at trial. *State v. Keenan*, 81 Ohio St.3d 133, 142 (1998), citing *California v. Green*, 399 U.S. 149, 158 (1970). J.V. testified at trial, and defense counsel vigorously cross-examined her. With respect to the Confrontation Clause, therefore, we cannot conclude that the trial court erred.

{¶12} Mr. Peasley's final argument appears to be that the detective's testimony impermissibly verified aspects of J.V.'s testimony. In the portion of the detective's testimony to which Mr. Peasley directs this Court's attention, the detective testified that he connected Mr. Peasley to his street name. That connection, however, was made by other witnesses in addition to J.V. and the detective. In addition, to the extent that this aspect of Mr. Peasley's argument relates to his identification as the shooter, this Court cannot conclude that he was prejudiced because he admitted during his own testimony that he shot R.V. Because Mr. Peasley cannot demonstrate that he was prejudiced, this alleged error is not well taken. *See State v. Stephens*, 2024-Ohio-4740, ¶ 4-5 (9th Dist.), citing Evid.R. 103(A) and Crim.R. 52(B). Mr. Peasley's fourth assignment of error is overruled.

**ASSIGNMENT OF ERROR V**

> APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AS [GUARANTEED] BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 1, ARTICLE 10 OF THE OHIO CONSTITUTION.

{¶13} Mr. Peasley's fifth assignment of error argues that he did not receive effective assistance of counsel. This Court does not agree.

{¶14} In order to demonstrate ineffective assistance of counsel, a defendant must show (1) deficiency in the performance of counsel "so serious that counsel was not functioning as the

'counsel' guaranteed the defendant by the Sixth Amendment" and (2) that the errors made by counsel were "so serious as to deprive the defendant of a fair trial[.]" *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A defendant must demonstrate prejudice by showing that, but for counsel's errors, there is a reasonable possibility that the outcome of the trial would have been different. *Id*. at 694. In applying this test, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Strickland* at 689. Debatable trial strategy, for example, generally does not constitute ineffective assistance of counsel. *State v. Snowberger*, 2022-Ohio-279, ¶ 26 (9th Dist.). "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland* at 689.

{¶15} Mr. Peasley maintains that trial counsel's ineffectiveness is demonstrated by the fact that counsel did not request a jury instruction explaining the presumption of self-defense set forth in Section 2901.05(B)(2), which provides:

> Subject to division (B)(3) of this section, a person is presumed to have acted in self-defense or defense of another when using defensive force that is intended or likely to cause death or great bodily harm to another if the person against whom the defensive force is used is in the process of unlawfully and without privilege to do so entering, *or has unlawfully and without privilege to do so entered*, the residence or vehicle occupied by the person using the defensive force.

(Emphasis added.). Section 2901.05(B)(3) further explains that "[t]he presumption set forth in division (B)(2) of this section does not apply if . . . [t]he person against whom the defensive force is used has a right to be in . . . the residence or vehicle." This Court has observed that the conditions described in Section 2901.05(B)(3) "negate the existence of the presumption itself." *State v. Claren*, 2023-Ohio-2219, ¶ 17 (9th Dist.), quoting *State v. Hadley*, 2013-Ohio-1942, ¶ 55 (3d Dist.). Consequently, "the defendant is precluded from invoking . . . the presumption of self-

defense if the person against whom the defensive force was used had a right to be in . . . the residence at issue . . . ." *Id.*

{¶16} In this case, J.V. testified that she had known R.Z. for many years. She recalled that on the day of the shooting, she was awakened by a knock at the door. J.V. testified that R.Z. asked to hide in her house, and she allowed him to come in. According to J.V., she went back to bed until she was awakened again by a gunshot. J.V. also identified from her surveillance video the point at which R.Z. knocked at the door. With respect to her living situation, J.V. testified that she was the only renter who lived at the house, but she acknowledged that Mr. Peasley stayed with her occasionally and that she had given him a set of keys.

{¶17} Because the evidence demonstrated R.Z. had a right to be in J.V.'s residence, Mr. Peasley was precluded from invoking the presumption described in Section 2901.05(B)(2). Under these circumstances, this Court cannot conclude that trial counsel was ineffective for failing to request a jury instruction consistent with Section 2901.05(B)(2). Mr. Peasley's fifth assignment of error is overruled.

### ASSIGNMENT OF ERROR VI

APPELLANT'S CONVICTIONS WERE NOT BASED ON SUFFICIENT EVIDENCE.

{¶18} In his sixth assignment of error, Mr. Peasley has argued that his convictions for disrupting public service and for murder under Section 2903.02(A) are based on insufficient evidence. This Court does not agree.

{¶19} "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 2009-Ohio-6955, ¶ 18 (9th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins*

at 390 (Cook, J., concurring). For purposes of a sufficiency analysis, this Court must view the evidence in the light most favorable to the State. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We do not evaluate credibility, and we make all reasonable inferences in favor of the State. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). The evidence is sufficient if it allows the trier of fact to reasonably conclude that the essential elements of the crime were proved beyond a reasonable doubt. *Id.*

{¶20} Mr. Peasley's only argument with respect to the sufficiency of the evidence underlying his conviction for disrupting public service is that "[J.V.] testified that she had given her cell phone away over a week prior to the shooting." This argument relates to the weight of the evidence, not to the sufficiency of the evidence presented by the State. *State v. Calhoun*, 2021-Ohio-1713, ¶ 22 (9th Dist.). Mr. Peasley has not developed a sufficiency argument, and this Court will not construct one on his behalf. *See State v. Ross*, 2023-Ohio-1185, ¶ 10 (9th Dist.).

{¶21} With respect to his conviction for murder under Section 2903.02(A), Mr. Peasley has argued that the State did not produce sufficient evidence that he acted purposely. Section 2903.02(A) prohibits any person from "purposely caus[ing] the death of another . . . ." According to Section 2901.22(A), "[a] person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." Intent must be demonstrated with reference to the surrounding facts and circumstances. *See In re Washington*, 81 Ohio St.3d 337, 340 (1998). "The intent of an accused person dwells in his mind. Not being ascertainable by the exercise of any or all of the senses, it can never be proved by the direct testimony of a third person, and it need not be. It must be gathered from the surrounding facts and circumstances under proper instructions

from the court." *Id.*, quoting *State v. Huffman*, 131 Ohio St. 27 (1936), paragraph four of the syllabus.

{¶22} "[I]ntent to kill 'may be deduced from all the surrounding circumstances, including the instrument used to produce death, its tendency to destroy life if designed for that purpose, and the manner of inflicting a fatal wound.'" *State v. Stallings*, 89 Ohio St.3d 280, 290 (2000), quoting *State v. Robinson*, 161 Ohio St. 213 (1954), paragraph five of the syllabus. When a defendant "inflicts a wound with a deadly weapon in a manner that appears to be calculated to destroy life or inflict great bodily harm[,]" a jury may infer that the defendant acted purposely. *State v. Ivery*, 2020-Ohio-3349, ¶ 10 (9th Dist.), quoting *State v. Shorter*, 2012-Ohio-2701, ¶ 16 (7th Dist.). A deadly weapon is "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C. 2923.11(A). In addition, the Supreme Court of Ohio has observed that "a firearm is an inherently dangerous instrumentality, the use of which is reasonably likely to produce death . . . ." *State v. Widner*, 69 Ohio St.2d 267, 270 (1982). *See also Ivery* at ¶ 10.

{¶23} According to Mr. Peasley's own testimony, he ran toward R.Z., wrested a shotgun from his hands, and the gun went off. Mr. Peasley agreed that he cocked, racked, and fired the gun at R.Z. two more times when R.Z. was unarmed and attempting to flee. According to the medical examiner who conducted the autopsy, the presence of "wadding" in the wound in addition to the slug demonstrated that R.Z. was shot at close range, noting that "[t]he end of the shotgun [was] either in hard contact against the belt or possibly maybe an inch away, two inches. But I believe it's most likely pressed up against the belt at the time it was fired." Mr. Peasley acknowledged that he took action to prevent anyone from calling 911, and he testified that when R.Z. cried for help, he replied, "Shut up. I'm not trying to hear it. I don't want to help you."

**{¶24}** Viewing this evidence in the light most favorable to the State – and making all reasonable inferences in favor of the State – the jury could reasonably conclude that Mr. Peasley inflicted a wound upon R.Z. with a deadly weapon in a manner calculated to end his life or to inflict great bodily harm. *See Ivery* at ¶ 10. Mr. Peasley's conviction for murder under Section 2903.02(A) is supported by sufficient evidence, and his sixth assignment of error is overruled.

## III.

**{¶25}** Mr. Peasley's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

CARR, P. J.
SUTTON, J.
<u>CONCUR.</u>

<u>APPEARANCES:</u>

JOSEPH C. PATITUCE, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellee.