**[Cite as *State v. Mason*, 2024-Ohio-2796.]**

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | | C.A. No. 30838 |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| CHRISTOPHER M. MASON | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. CR-2023-02-0459 |

DECISION AND JOURNAL ENTRY

Dated: July 24, 2024

HENSAL, Judge.

{¶1} Christopher Mason appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} Mr. Mason shot his girlfriend inside her apartment. Her five-year-old child witnessed the shooting. Before leaving the apartment, Mr. Mason shot the child in the face and removed the apartment's Ring camera. He spoke with an old acquaintance about an hour later. He told the acquaintance he had shot someone who attacked him. He also admitted that he had shot her child.

{¶3} Neighbors heard the shots fired at the girlfriend's apartment and called 911. The police responded to the scene and found the child injured but alive. The child told an officer that "Chris killed her mama" and that "Chris" was her mother's boyfriend. The police arrested Mr.

Mason after they confirmed that he was the mother's boyfriend and that he had been at the apartment that evening.

{¶4}    With respect to the mother, Mr. Mason was charged with murder, felony murder, and felonious assault.  With respect to the child, he was charged with attempted murder, attempted felony murder, felonious assault, and endangering children.  He also was charged with having a weapon under disability and multiple firearm specifications.

{¶5}    Mr. Mason executed a jury trial waiver, and a bench trial ensued.  He admitted that he shot the mother but claimed he acted in self-defense.  The trial court rejected his defense and found him guilty on all counts.  It imposed an indefinite sentence consisting of a minimum term of 31 years and a maximum term of life in prison.  Mr. Mason appeals and raises two assignments of error for review.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT LACKED JURISDICTION TO TRY MR. MASON BECAUSE THE JURY-WAIVER PROCEDURE DID NOT STRICTLY COMPLY WITH R.C. 2945.05.

{¶6}    In his first assignment of error, Mr. Mason argues the trial court lacked jurisdiction to conduct his bench trial because it did not secure a valid waiver of his right to a jury trial.  For the following reasons, we reject his argument.

{¶7}    Revised Code 2945.05 addresses the waiver of a defendant's right to a trial by jury.  "[T]o be valid, a waiver must meet five conditions.  It must be (1) in writing, (2) signed by the defendant, (3) filed, (4) made part of the record, and (5) made in open court."  *State v. Lomax*, 2007-Ohio-4277, ¶ 9.  "Absent strict compliance with the requirements of R.C. 2945.05, a trial

court lacks jurisdiction to try the defendant without a jury." *State v. Pless*, 74 Ohio St.3d 333 (1996), paragraph one of the syllabus.

{¶8} The trial court conducted a status hearing on June 2, 2023. At that hearing, defense counsel appeared in person, and Mr. Mason appeared remotely by video. The court personally addressed Mr. Mason and asked whether he agreed to appear by video. Mr. Mason said yes. Defense counsel then informed the court that Mr. Mason wanted a bench trial. The following exchange took place:

> THE COURT: . . . Mr. Mason, without telling me the details of your conversation, did you discuss your right to jury trial with [defense counsel]?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Did he answer all your questions about it?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you feel you understand your right to jury trial?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you have any questions for me?
>
> THE DEFENDANT: No.
>
> THE COURT: Okay. So you know that you have the right to be tried by a jury of 12 people. All 12 would have to agree as to your guilt or not guilty.
>
> THE DEFENDANT: Yes.
>
> THE COURT: And it would have to be a unanimous decision.
>
> THE DEFENDANT: Yes.
>
> THE COURT: Is it your intention to give up that right and have this matter tried just to me, so that I will make that decision?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Okay. Well, I'm going to find that you have knowingly, intelligently, voluntarily waived your right to jury trial.

I will need a signed jury waiver, [defense counsel], that will need to be filed before we can begin the trial.

But you can acquire that from Mr. Mason between now and then, and we'll get it filed as soon as we can.

A written waiver of jury trial was filed on June 12, 2023. The written waiver was signed by Mr. Mason and filed more than a month before his trial.

{¶9} Mr. Mason argues the trial court did not strictly comply with Revised Code 2945.05's open court requirement. He notes that he appeared remotely, so he was not physically present to review or sign his jury trial waiver "in open court." According to Mr. Mason, his physical presence was required because the trial court did not ensure that he knowingly waived his right to appear in person. Specifically, the court did not tell him he had a right to be physically present and a right to speak privately with his attorney at any time. *See* Former Crim.R. 43(A)(2)(d) and (3). Because the court failed to comply with those notice requirements under Criminal Rule 43, Mr. Mason argues, he did not knowingly waive his right to be present at the status hearing. Thus, he claims his oral waiver of his right to a jury trial was invalid as he was not present "in open court" when the court reviewed and accepted it. He also contests the validity of his written jury trial waiver because it indicates it was "[s]igned in open Court" on the day of the status hearing even though he was not there to sign it.

{¶10} Initially, we note that Mr. Mason's first assignment of error presents us with a jurisdictional challenge under R.C. 2945.05. The only issue is whether the trial court strictly complied with that statute in securing his jury trial waiver. To the extent Mr. Mason argues that the court failed to comply with Criminal Rule 43, his argument falls outside the scope of his assigned error, and we decline to address it. We limit our review to the jurisdictional issue. *See State v. Williams*, 2021-Ohio-2491, ¶ 15 (9th Dist.).

**{¶11}** Upon review, we must conclude the trial court strictly complied with Section 2945.05 in securing Mr. Mason's jury trial waiver. "[T]he term 'open court' means that court is in session and the judge is on the bench." *State v. Davis*, 2008-Ohio-6741, ¶ 15 (9th Dist.), quoting *State v. Monroe*, 2000 WL 807228, *5 (4th Dist. June 14, 2000). "To satisfy the 'in open court' requirement in R.C. 2945.05, there must be some evidence in the record that the defendant while in the courtroom and in the presence of counsel, if any, acknowledged the jury waiver to the trial court." *Lomax*, 2007-Ohio-4277, at paragraph two of the syllabus.

**{¶12}** The record reflects Mr. Mason was present in the courtroom through video technology while court was in session and the judge was on the bench. His attorney also was present in the courtroom. The trial court reviewed the components of his right to a jury trial with him. Mr. Mason acknowledged that right and indicated that he wished to waive it and proceed with a bench trial. There is no indication in the record that he did not understand his right, that he could not hear the trial court, or that his participation via video technology otherwise impeded his ability to participate in the proceedings. Moreover, the written waiver he signed was filed in advance of trial. Mr. Mason has not set forth any law tending to show that the trial court was required to secure his written waiver at the same time it secured his oral waiver. This Court will not construct an argument on his behalf. *See* App.R. 16(A)(7); *Cardone v. Cardone*, 1998 WL 224934, *8 (9th Dist. May 6, 1998). Mr. Mason has not shown that the trial court failed to strictly comply with Revised Code 2945.05 such that it lacked jurisdiction to try him. Accordingly, his first assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE TRIAL COURT'S GUILTY VERDICTS ON COUNTS 1 AND 2 WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶13}** In his second assignment of error, Mr. Mason argues the trier of fact lost its way when it found him guilty of murder and felony murder because the State failed to disprove his claim that he shot the mother in self-defense. We disagree.

**{¶14}** When considering whether a conviction is against the manifest weight of the evidence, this Court must:

> review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist. 1986). A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction. *Id.*, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

**{¶15}** Self-defense is an affirmative defense in Ohio. *State v. Messenger*, 2022-Ohio-4562, ¶ 24. "[A] defendant charged with an offense involving the use of force has the burden of producing legally sufficient evidence that [his] use of force was in self-defense." *Id.* at ¶ 25. Once a defendant satisfies his burden of production, the burden of persuasion shifts to the State "to prove beyond a reasonable doubt that the accused did not use force in self-defense." *State v. Brooks*, 2022-Ohio-2478, ¶ 6. The State's burden "is subject to a manifest-weight review on appeal . . . ." *Messenger* at ¶ 27.

**{¶16}** The elements of self-defense are:

> (1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he [or she] was in imminent danger of death or great bodily harm and that his [or her] only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger.

(Bracketed text in original.) *Id.* at ¶ 14, quoting *State v. Barnes*, 94 Ohio St.3d 21, 24 (2002). "To carry its burden of persuasion, the State need only disprove one of the foregoing elements beyond a reasonable doubt." *State v. Fleckenstein*, 2023-Ohio-4347, ¶ 24 (9th Dist.).

{¶17} Officer Travis Sheely responded to the mother's apartment about twenty minutes after the shooting. He testified that a neighbor reported hearing several gunshots and someone screaming for their mom inside the apartment. Officer Sheely found the child inside the apartment. She was covered in blood and had been shot under her left eye. Officer Sheely testified that the child said, "Chris killed her mama."

{¶18} Detective Dan Gump inspected the mother's apartment as part of the crime scene unit. His unit found a total of four bullet casings inside the apartment. They also found several bullet holes facing different directions. He testified that there was bullet damage to the front window of the apartment, the side wall of the apartment, and the kitchen at the back of the apartment. Detective Gump and his team collected a knife they found on a table inside the apartment. They also found a ring doorbell device lying on the floor of the apartment just inside the front door.

{¶19} The State played footage from multiple Ring doorbell cameras and similar devices at trial. One of those devices belonged to the mother. A maintenance supervisor for her property testified that he had installed the camera for her just outside her front door. The police were able to recover footage from that device by issuing Ring a subpoena. The footage captured the sound of a child crying, a gunshot, the child screaming, a second gunshot, more screaming, and a third gunshot that temporarily silenced the child's screaming. It captured the child beginning to cry again as Mr. Mason exited the apartment directly in front of the Ring camera. A gun was visible in his hand as he closed the door on the screaming child. The footage then showed him putting

his hand on the Ring device before the footage ended abruptly. Detective Tom Parr testified that it appeared the Ring device had been torn from its position and thrown inside the apartment.

{¶20} Other devices in the area captured Mr. Mason leaving the mother's apartment on foot with a dog and walking to a nearby commercial building. The footage showed him walking around the building and waiting between the wall of the building and a dumpster as police cars sped by with audible sirens activated. When Mr. Mason later emerged, he traveled to the home of an old acquaintance who lived to the southwest. The acquaintance's Ring camera showed Mr. Mason arriving about one hour after the shooting occurred.

{¶21} The acquaintance testified that he had known Mr. Mason for about thirteen years and did not expect to see him that evening. After he let Mr. Mason inside his home, Mr. Mason said something bad had happened. He said a female "came at him with a knife, he was defending himself, and he shot her." He also said he shot the woman's child after "the little girl said something . . . ." The acquaintance testified that Mr. Mason asked for bleach while he was at his house.

{¶22} A social worker from the CARE Center at Akron Children's Hospital interviewed the child about two weeks after the shooting. She testified that the child was hesitant to discuss the shooting incident at all and became visibly distressed when asked about it. The child only said: "Mom got dead. She got shot by a gun too. They were fighting."

{¶23} The mother's sister testified that the mother had a "[t]oxic" relationship with Mr. Mason. Although the mother had been doing well, the sister felt that the mother "seemed to be in a place where she was moving backwards" when she began dating Mr. Mason. The sister confirmed that the mother did not have a firearm and that she would have known if the mother had one.

{¶24} Dr. Kristi Waite conducted the mother's autopsy. She testified that the mother died from a single gunshot wound to the back of her head, which would have resulted in an almost immediate death. She also observed several other injuries. The mother had abrasions on her right cheek and collar bone and superficial cuts to her left armpit and breast, her palm, and the back of her ankle. Dr. Waite completed a toxicology screening, and her report showed the mother had a blood alcohol concentration level of .149% at the time of her death. No one questioned Dr. Waite about the significance of that finding at trial.

{¶25} Mr. Mason argues the trier of fact lost its way when it found him guilty of murder and felony murder because the evidence tended to show that he shot the mother in self-defense. He notes that the child told a social worker he and the mother were fighting before he shot her, the mother had knife wounds on her body, and the toxicology report showed the mother was intoxicated. He also notes that he told the acquaintance shortly after the shooting that he had shot the mother in self-defense. Mr. Mason argues his convictions for murder and felony murder are against the manifest weight of the evidence because the State failed to disprove any of the elements of his claim of self-defense.

{¶26} Having reviewed the record, we cannot say this is the exceptional case in which the evidence weighs heavily against the conclusion that the State disproved Mr. Mason's claim of self-defense. *See Messenger*, 2022-Ohio-4562, at ¶ 27; *Otten*, 33 Ohio App.3d at 340. "As this Court and others have acknowledged, a defendant's credibility is central to a [trier of fact's] determination of whether the defendant acted in self-defense." *State v. Moore*, 2023-Ohio-2864, ¶ 12 (9th Dist.). The court heard evidence that Mr. Mason shot the mother in the back of the head. She also had superficial wounds to several areas of her body. Her injuries were not necessarily consistent with Mr. Mason's claim that she attacked him and he had no choice but to shoot her.

Although the child said Mr. Mason and her mother were "fighting," she was unable to elaborate. It is unclear whether she meant that there was a verbal disagreement, a physical struggle in which her mother was attacking Mr. Mason, or a physical struggle in which Mr. Mason was attacking her mother. Moreover, the evidence showed that Mr. Mason shot the child in the face and disabled the mother's Ring camera before leaving the apartment. He then hid behind a dumpster as the police responded to the area. The court reasonably could have concluded that he took those actions to evade capture and to try to conceal his crime because he shot the mother without justification.

{¶27} "This Court will not overturn a verdict on a manifest weight challenge simply because the jury chose to believe the State's version of the events." *State v. Harris*, 2024-Ohio-196, ¶ 19 (9th Dist.). Given the evidence presented at trial, the court reasonably could have concluded that either Mr. Mason was at fault in creating the situation that resulted in the mother's death or that he lacked a bona fide believe that he was in imminent danger of death or great bodily harm and his only means of escape was the use of force. *See Messenger* at ¶ 14. Accordingly, he has not shown that the evidence weighs heavily against the conclusion that the State disproved his claim of self-defense. His second assignment of error is overruled.

### III.

{¶28} Mr. Mason's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

---

JENNIFER HENSAL
FOR THE COURT

SUTTON, P. J.
FLAGG LANZINGER, J.
CONCUR.


APPEARANCES:

CRAIG M. JAQUITH, Assistant Public Defender, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.